UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| JEREMY STOKER, | ) | |
| --- | --- | --- |
| | ) | Case Nos. 1:16-cr-20; 1:18-cv-10 |
| *Petitioner*, | ) | |
| | ) | Judge Travis R. McDonough |
| v. | ) | |
| | ) | Magistrate Judge Christopher H. Steger |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| *Respondent*. | ) | |

**MEMORANDUM OPINION**

Before the Court is Petitioner Jeremy Stoker's motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. §2255. (Doc. 87 in Case No. 1:16-cr-20; Doc. 1 in Case No. 1:18-cv-10.) For the following reasons, the Court will **DENY** Petitioner's motion.

**I. BACKGROUND**

On February 23, 2016, a grand jury returned a four-count indictment against Petitioner charging him with: (1) conspiracy to distribute and possess with the intent to distribute methamphetamine in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A) and 846 ("Count One"); (2) possession with the intent to distribute methamphetamine in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(B) ("Count Two"); (3) possession of firearms during and in relationship to a drug trafficking offense in violation of 18 U.S.C. § 924(c) ("Count Three"); and (4) possession of a firearm by a convicted felon in violation of 18 U.S.C. § 922(g)(1).[1] (Doc. 1 in Case No 1:16-cr-20.)

---

[1] The indictment charged co-defendant Nicole Roberts with three counts: (1) conspiracy to distribute and possess with the intent to distribute methamphetamine in violation of 21, United

According to Petitioner's plea agreement and his Presentence Investigation Report ("PSR"), which the Court adopted without objection at sentencing, during a post-arrest interview conducted by Drug Enforcement Administration agents on October 26, 2015, Petitioner waived his *Miranda* rights and confessed that he participated in a methamphetamine conspiracy beginning shortly after he was released from jail in April 2015. (*See* Doc. 57 in Case No. 1:16-cr-20, at 5–9; Doc. 72 in Case No. 1:16-cr-20, at 6.) Petitioner also detailed the scope of the conspiracy, including that he obtained "ice methamphetamine 3–4 times per week for several weeks," and that he "would travel to meet with [his] source's messengers to obtain 18–36 ounces of ice methamphetamine on 25–30 occasions for between $6,500 and $12,000 each time." (Doc. 57 in Case No. 1:16-cr-20, at 5–9; Doc. 72 in Case No. 1:16-cr-20, at 6.) In this post-*Miranda* interview, Petitioner also admitted that "after being arrested on a probation violation, [he] hooked up with another released inmate . . . [and] obtained 4–5 ounces of ice methamphetamine, and on approximately four occasions thereafter, he obtained 25 ounces from this source for $6,500 each time for a total of at least 100 ounces." (Doc. 57, at 5–9 in Case No. 1:16-cr-20; Doc. 72 in Case No. 1:16-cr-20, at 6.)

On September 7, 2016, Petitioner pleaded guilty to one count of conspiracy to distribute and possess with the intent to distribute fifty grams or more of methamphetamine (actual) and five hundred grams or more of a mixture and substance containing methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A) and 846, and to one count of being a felon in

---

U.S.C. §§ 841(a)(1), (b)(1)(A) and 846; (2) possession with the intent to distribute methamphetamine in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(B); and (3) possession of firearms during and in relationship to a drug trafficking offense in violation of 18 U.S.C. § 924(c). (Doc. 1.)

possession of a firearm, in violation of 18 U.S.C. § 922(g)(1).[2] (*See* Docs. 42, 43 in Case No. 1:16-cr-20.)

On December 16, 2017, pursuant to an agreement under Rule 11(c)(1)(C) of the Federal Rules of Criminal Procedure, the Court sentenced Petitioner to 262 months' imprisonment. (Doc. 80 in Case No. 1:16-cr-20.) Petitioner did not appeal his conviction or sentence, but, on January 19, 2018, he timely filed the instant § 2255 motion. (Doc. 87 in Case No. 1:16-cr-20; Doc. 1 in Case No. 1:18-cv-10.) In his motion, Petitioner asserts that his conviction and sentence should be set aside or vacated because he received ineffective assistance of counsel in violation of the Sixth Amendment to the United States Constitution. (Doc. 87 in Case No. 1:16-cr-20; Doc. 1 in Case No. 1:18-cv-10.)

On October 25, 2018, the Court entered an order finding that an evidentiary hearing was necessary to resolve Petitioner's claim that he received ineffective assistance of counsel based on his arguments that: (1) his attorneys failed to file a motion to suppress his post-*Miranda* statements to law enforcement while under the influence of methamphetamine and Xanax; and (2) Curtis Bowe represented him while subject to a conflict of interest. (*See* Doc. 6 in Case No. 1:18-cv-10.) After numerous continuances at the parties' request, the Court held the evidentiary hearing on September 7, 2021, and heard testimony from Petitioner, his former attorneys, Curtis Bowe and Giles Jones, Drug Enforcement Administration Ageny Andrew Bergren, Jesse Young, Stoker's cellmate, and Dr. Jonathan Lipman, a neuropharmacologist. (*See* Doc. 50 in Case No. 1:18-cv-10.)

---

[2] Petitioner initially entered a plea agreement on July 28, 2016, while represented by Curtis Bowe. (Doc. 29 in Case No. 1:16-cr-20.) On September 7, 2016, after the Court allowed Bowe to withdraw and appointed Giles Jones to represent Petitioner, Petitioner entered an amended plea agreement (Doc. 43 in Case No. 1:16-cr-20.) On December 19, 2016, the parties filed a revised plea agreement. (Doc. 72 in Case No. 1:16-cr-20.)

At the hearing, Bowe testified that: (1) he had several in-person meetings with Petitioner during which he discussed the specifics of the Government's charges against him; (2) Petitioner had a clear recollection of the events leading up to his arrest during their conversations about the case; (3) Petitioner never asked him about filing a motion to suppress and never indicated that he was under the influence of methamphetamine and Xanax at the time he made his post-*Miranda* statements to law enforcement[3]; (4) during his representation of Petitioner, Petitioner was relatively consistent about wanting to plead guilty and receive the lowest sentence possible; and (5) Bowe withdrew from his representation of Petitioner as soon as he learned that one of his paralegals hired Petitioner's father to repair her four-wheelers, and Petitioner's father reported that he did not have the four-wheelers because Petitioner stole them.

Giles Jones, Petitioner's attorney after Bowe withdrew, testified that Petitioner told him he was under the influence of drugs at the time of his arrest and they discussed the possibility of filing a motion to suppress. According to Jones, he recalled that Petitioner was interviewed by the Drug Enforcement Administration approximately three days after his arrest[4], and, according to his research, he did not believe he had a good basis to file a motion to suppress, especially because he thought the Government could prove its case against Petitioner even without his post-*Miranda* statements. Jones testified that he presented this information to Petitioner, and Petitioner decided to move forward with pleading guilty. Jones also testified, however, that had

---

[3] Bowe did testify that Petitioner told him he was under the influence of narcotics before he engaged in the conduct that got him arrested, but that there was nothing, in his opinion, that raised a red flag as whether Petitioner was under the influence at the time he made his post-*Miranda* statements to law enforcement.

[4] The Government later asked Jones if it would be accurate if records reflected that Petitioner was interviewed between thirty-six and forty hours after he was arrested. Jones testified that it "could be."

Petitioner expressed that he wanted to move forward with a motion to suppress, he would have filed one on Petitioner's behalf.

Drug Enforcement Administration Agent Andrew Bergren testified that, during Petitioner's post-*Miranda* interview, he mentioned that he had taken Xanax at some point before he was arrested, he was "tired," and he had been "going hard," but he was very descriptive about his conduct, knew relevant dates, and did not show any signs of being incapable of giving statements to law enforcement or signs suggesting that he was under the influence of drugs at the time of the interview. Bergren further testified that Petitioner was relatively still, used an appropriate volume in responding to questions, did not make any irrational statements, and gave answers responsive to the questions asked with very specific details.

Petitioner testified that he was under the influence of methamphetamine and Xanax at the time he was arrested and that he had likely been awake for a week straight due to his drug consumption. Petitioner also testified that he did not remember what he talked about in his post-arrest interview. As it relates to Bowe's representation, Petitioner testified that he did not ask him to file a suppression motion, because he did not know what a suppression motion was but also conceded that he does not remember talking to Bowe about his post-arrest statements to law enforcement. Petitioner also testified that, although he remembered discussing his post-arrest statements with Jones, he did not recall telling Jones that he was too intoxicated to make those statements and that he did not recall talking to Jones about a suppression motion. Overall, Petitioner testified that he did not recall the substance of most of his conversations with Bowe and Jones. Additionally, during cross-examination, the Government questioned Petitioner about his change-of-plea hearing and his sentencing hearing, noting that his testimony at the evidentiary hearing conflicted with statements he made during prior hearings. For example,

Petitioner testified during the evidentiary hearing that he believed he was innocent of the crimes he was charged with, even though he testified under oath at his change-of-plea hearing that he agreed with the factual basis provided by the Government and that he represented to the Court that he was pleading guilty because he was, in fact, guilty. Similarly, during the evidentiary hearing, Petitioner claimed he had never seen his PSR, even though he stated at sentencing that he had seen the report and had sufficient time to discuss it with his attorney. In Petitioner's words: "I'm not saying I was lying. I'm just saying that I checked everything that needed to be yes and no to get through it. . . . Well, to get through the hearing, when I first come through the first time, I would have said yes, yes, to whatever, all the way through to – all the way to the end. . . . Even if it was untrue."

Jesse Young testified that he shared a holding cell in the Walker County Jail with Petitioner after Petitioner's arrest. According to Young, he observed Petitioner mumbling, falling asleep, jerking awake, and speaking incoherently. Young testified that Petitioner was still in this state at the time he was taken out of the cell for his post-arrest interview. Young also testified that Petitioner took eight to ten yellow pills, which he believed were Xanax, on the second morning Petitioner was in custody.

Finally, Dr. Jonathan Lipman, a neuropharmacologist, testified about the potential effects of Petitioner's purported drug consumption based on the testimony he heard during the evidentiary hearing. Specifically, Lipman testified, among other things, that, if Petitioner consumed methamphetamine and Xanax at the rates he testified to, Petitioner would likely still have methamphetamine and Xanax in his system for days after ingestion and he would expect Petitioner to have a hard time staying awake. Lipman, however, acknowledged that his testimony was based on the testimony he heard during the hearing and that he did not review

Petitioner's medical records or interview Petitioner. Lipman also acknowledged that he could not necessarily attribute Petitioner's failure to recall his post-arrest interview to his drug consumption and testified that Petitioner could simply have a bad memory.

With the evidentiary hearing now complete, Petitioner's § 2255 motion is ripe for the Court's review.

## II. STANDARD OF LAW

To obtain relief under Title 28, United States Code, Section 2255, a petitioner must demonstrate: "(1) an error of constitutional magnitude; (2) a sentence imposed outside the statutory limits; or (3) an error of fact or law . . . so fundamental as to render the entire proceeding invalid." *Short v. United States*, 471 F.3d 686, 691 (6th Cir. 2006) (quoting *Mallett v. United States*, 334 F.3d 491, 496–97 (6th Cir. 2003)). The petitioner "must clear a significantly higher hurdle than would exist on direct appeal" and establish a "fundamental defect in the proceedings which necessarily results in a complete miscarriage of justice or an egregious error violative of due process." *Fair v. United States*, 157 F.3d 427, 430 (6th Cir. 1998).

To collaterally attack a conviction based on ineffective assistance of counsel, Petitioner must establish "that [his] lawyers performed well below the norm of competence in the profession and that this failing prejudiced [his] case." *Caudill v. Conover*, 881 F.3d 454, 460 (6th Cir. 2018) (citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984)). The performance inquiry requires the defendant to "show that counsel's representation fell below an objective standard of reasonableness." *Strickland*, 466 U.S. at 688. The prejudice inquiry requires the defendant to "show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. "A reasonable

probability is a probability sufficient to undermine confidence in the outcome." *See Rodriguez-Penton v. United States*, 905 F. 3d 481, 487 (6th Cir. 2018). However, there is a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689. Therefore, courts should resist "the temptation to rely on hindsight . . . in the context of ineffective assistance claims." *Carson v. United States*, 3 F. App'x 321, 324 (6th Cir. 2001); *see also Strickland*, 466 U.S. at 689 ("A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time.").

III. ANALYSIS

    *a. Failure to File a Motion to Suppress*

In his § 2255 motion, Petitioner asserts that he received ineffective assistance of counsel because his counsel failed to file a motion to suppress statements he made to law enforcement after his arrest. Specifically, Petitioner argues that he made those statements while under the influence of methamphetamine and Xanax and was incapable of making a knowing, voluntary, and intelligent waiver of his *Miranda* rights. (Doc. 1 in Case No. 1:18-cv-10, at 2.) In is motion, Petitioner maintains that he urged trial counsel to move to suppress these statements based on his impairment at the time of confession, but that his trial counsel summarily refused to file a motion to suppress or investigate the feasibility of a suppression motion. (*Id*. at 2–3.)

Failure to file a suppression motion may amount to ineffective assistance, but it is not ineffective assistance *per se*. *Kimmelman v. Morrison*, 477 U.S. 365, 375 (1986). To demonstrate ineffective assistance of counsel based on failure to file a motion to suppress, a petitioner must show that counsel's failure fell below an objective standard of reasonableness.

*Id*. Additionally, the petitioner must demonstrate that his motion to suppress is meritorious and that there is a reasonable probability that the outcome would have been different absent the excludable evidence. *Williams v. United States*, 632 F. App'x 816, 821 (6th Cir. 2015) (citing *Kimmelman*, 477 U.S. at 375).

The Fifth Amendment right against self-incrimination bars the admission of involuntary confessions. *United States v. Hernandez*, 611 F. App'x 261, 267 (6th Cir. 2015). "A confession is involuntary due to police coercion if . . . the coercion in question was sufficient to overbear the defendant's will." *Id*. In assessing whether the alleged coercion was sufficient to overcome the defendant's will, intoxication is a relevant factor. *Id*. As the Sixth Circuit explains, "in some settings, the influence of drugs, prescribed or otherwise, or the influence of alcohol may tip the balance in favor of finding a lack of capacity." *United States v. Montgomery*, 621 F.3d 568, 571–72 (6th Cir. 2010). "Drug-induced impairment, moreover, is a matter of degree, making it appropriate to gauge the impact of drugs on a case-by-case basis and in view of other circumstances at play." *Id*.

In this case, Petitioner has failed to demonstrate that a motion to suppress, if filed, would have been meritorious, because Petitioner has not demonstrated that his post-*Miranda* statements to law enforcement were coerced. DEA agent Bergren credibly testified that, although Petitioner mentioned that had taken Xanax at some point before he was arrested, he was otherwise descriptive about his conduct, knew relevant dates, and did not show any signs of being incapable of giving statements to law enforcement or signs suggesting that he was under the influence of drugs at the time of the interview. Bergren also testified that Petitioner was relatively still, used an appropriate volume in responding to questions, did not make any irrational statements, and gave answers responsive to the questions asked with very specific

details.  Given Bergren's credible testimony[5] and the fact that the interview occurred approximately thirty-six to forty hours after Petitioner's arrest, the Court finds that there was no reason for Bergren to suspect that Petitioner was so intoxicated as to render him more susceptible to official pressure than a person who was not intoxicated.  *See Hernandez*, 611 F. App'x at 267–68.  Accordingly, Petitioner has not demonstrated that a motion to suppress his post-arrest statements to law enforcement was meritorious.

Further, Petitioner failed to demonstrate that his attorneys' failure to file a motion to suppress fell below an objective standard of reasonableness.  Bowe credibly testified that Petitioner never asked him about filing a motion to suppress and never indicated that he was under the influence of methamphetamine and Xanax at the time he made his post-*Miranda* statements to law enforcement.  Jones testified that he conducted research regarding a potential motion to suppress but advised Petitioner that he did not believe he had a good basis to file the motion.  Jones also testified that he discussed the possibility of filing a motion to suppress with Petitioner, and Petitioner decided to move forward with pleading guilty.  The Court finds Jones's testimony credible.  Under these circumstances, Petitioner has failed to demonstrate that his counsels' failure to file a motion to suppress on his behalf fell below an objective standard of reasonableness.

### b. *Conflict of Interest*

In his motion, Petitioner also asserts that he received ineffective assistance of counsel because Bowe counseled him to enter a plea agreement while subject to a conflict of interest.  At

---

[5] Conversely, Petitioner's testimony at the evidentiary hearing was not credible.  Petitioner made statements inconsistent with his prior statements to the Court while under oath and admitted that in previous hearings before the Court he would say whatever he needed to say to get through a hearing, "even if it was untrue."

the hearing, however, Bowe testified that he learned of a potential conflict of interest after Petitioner signed his plea agreement and that he moved to withdraw from his representation of Petitioner as soon as he learned of the potential conflict of interest. Based on Bowe's credible testimony during the evidentiary hearing, the Court finds that Petitioner has failed to demonstrate that Bowe's representation fell below an objective standard of reasonableness or that he was prejudiced as a result.

IV. **CONCLUSION**

For the reasons stated herein, Petitioner's § 2255 motion is **DENIED**. (Doc. 87 in Case No. 1:16-cr-20; Doc. 1 in Case No. 1:18-cv-10.) Should Petitioner give timely notice of an appeal from this order, such notice will be treated as an application for a certificate of appealability, which is **DENIED** because he has failed to make a substantial showing of the denial of a constitutional right or to present a question of some substance about which reasonable jurists could differ. *See* 28 U.S.C. § 2253(c)(2); Fed. R. App. P. 22(b); *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Additionally, the Court has reviewed this case pursuant to Rule 24 of the Federal Rules of Appellate Procedure and hereby **CERTIFIES** that any appeal from this action would not be taken in good faith and would be totally frivolous. Therefore, any application by Petitioner for leave to proceed *in forma pauperis* on appeal is **DENIED**. *See* Fed. R. App. P. 24.

**AN APPROPRIATE JUDGMENT WILL ENTER.**

/s/ *Travis R. McDonough*
**TRAVIS R. MCDONOUGH**
**UNITED STATES DISTRICT JUDGE**